# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **GARY EDWARDS,** | CASE NO: CV99-131-N-EJL |
| Plaintiff, | ORDER |
| vs. | |
| **CITY OF COEUR D'ALENE, et al,** | |
| Defendants. | |

Pending before the Court in the above entitled matter is Plaintiff's Motion for Summary Judgment (Docket No. 52). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument. D. Id. L. Civ. R. 7.1.

## I. FACTUAL BACKGROUND

This case arose from the arrest of Gary Edwards by a Kootenai County sheriff's deputy on July 18, 1998. Docket Nos. 53 at 1; 54 at 3. The arrest was made pursuant to Idaho Code § 18-705 for resisting and obstructing an officer in the discharge of his duties when Mr. Edwards refused to surrender the wooden handle and wooden slat supports of his sign. Docket No. 54 at 3. Mr. Edwards subsequently filed suit on April 1, 1999 against both Kootenai County and the City of

ORDER
00ORDERS\EDWARDS.WPD



Coeur d'Alene ("the City") claiming that he had suffered a loss of his First Amendment rights due to the unconstitutional application of Idaho Code § 18-705 by Deputy White enforcing an unconstitutional "zero tolerance for weapons" policy promulgated by the City. Docket No. 54 at 3. On May 11, 1999, pursuant to a signed stipulation, the suit against Kootenai County was dismissed with prejudice. Docket Nos. 9; 53 at 1; 54 at 3.[1]

On May 4, 1999, subsequent to the filing of Mr. Edwards' complaint, the City passed Ordinance No. 2914 (codified as Section 9.52.050 of the municipal code). Docket Nos 53 at 1; 54 at 3. On May 24, 1999, the City amended Ordinance 2914 upon enactment of Ordinance 2920. Docket Nos. 53 at 2; 54 at 3. The stated purpose of the amendment was to provide an exemption from Section 9.52.050 to members of any United States veteran's organization that was national in scope, chartered by the United States Congress, and had a tradition of participating in parades and public assemblies. Docket No. 54 at 3.

On June 16, 1999, Mr. Edwards filed a motion for preliminary injunctive relief against Ordinance 2920, Section 1(D). Docket Nos. 19; 53 at 2; 54 at 3. By order entered August 17, 1999, this Court granted preliminary injunctive relief against Ordinance 2920, Section 1(D). Docket Nos. 36; 53 at 2; 54 at 3. While recognizing that the City had a legitimate and important government role in maintaining peace during a parade or a public assembly, this Court found the exemption provided to veteran groups in Ordinance 2920 at Section(C)(4) appeared to be an impermissible favoring of one group over another. Docket Nos. 36 at 6; 54 at 4.

On June 18, 1999, Mr. Edwards filed a motion to amend his Complaint to remove Kootenai County as a Defendant and to include a facial challenge to Ordinance 2920. Docket Nos. 21; 37;

---

[1] On May 21, 1999, this Court issued an Order against the City, as the only remaining Defendant, decreeing that "Defendant City shall not enforce any policies against Plaintiff's carrying of signs with handles at any future City events unless said policy is duly enacted by the City's elected representatives, constitutes reasonable time, place and manner restrictions addressing symbolic protest and sign construction, and is applied in an even-handed fashion after being duly proclaimed as the law." Docket Nos. 11 at 3; 53 at 1.

ORDER
00ORDERS\EDWARDS.WPD

53 at 2; 54 at 4. On November 1, 1999, Mr. Edwards again moved to amend his Complaint, citing to the completion of the discovery process and conceding that the City was neither the proximate nor the legal cause of his arrest. Docket Nos. 42; 48; 53 at 2; 54 at 4. This Amended Complaint removed the claim that the City had promulgated an unconstitutional policy that had resulted in the arrest of Mr. Edwards, and removed Mr. Edwards' claim for damages. Docket Nos. 48; 53 at 2; 54 at 4. The Second Amended Complaint once again challenged the validity of Ordinance 2920, sought a permanent injunction, and requested the Court strike Section 1(D) of the Ordinance. Docket Nos. 48; 53 at 2; 54 at 4.

The parties agree that the ordinance challenged by the Second Amended Complaint, Ordinance 2920, remains the law of the City. Docket Nos. 46 at ¶ 5; 53 at 2. The parties further agree that Mr. Edwards has standing to challenge said law. Id.

Ordinance 2920, in pertinent part, reads:

> BE IT ORDAINED, by the Mayor and City Council of the City of Coeur d'Alene:
> Section 1
> That Section 9.52.050, Coeur d'Alene Municipal Code, be and the same is hereby amended to read as follows:
> 9.52.050   ILLEGAL POSSESSION OF WEAPONS AT PARADES OR PUBLIC ASSEMBLIES:
>
> A.   It shall be unlawful for any person to have in his possession or to have in any vehicle any weapon while participating in or attending a parade or public assembly.
> B.   It shall be unlawful for any person to have in his possession or to have in any vehicle at a point within 1,000 feet of a parade or public assembly, or within 1,000 feet of the perimeter of a parade or public assembly from the beginning to the end of the route, in the case of a moving parade or public assembly any weapon. This section shall not apply to any person in possession of any weapon in his private dwelling or place of business. Any campers, mobile homes or trailers lawfully parked on private property within 1,000 feet of the parade or public assembly site shall also be excluded.
> C.   The following individuals, while acting lawfully and within authority, are exempted from the provisions of this section:
>    . . .
>    4.   Members of any United States Military Veteran's organizations that are national in scope, chartered by the United States Congress and have a tradition of participating in parades and public assemblies.
> D.   Placards or signs may be carried, subject to the following limitations. Placards or

ORDER
00ORDERS\EDWARDS.WPD

    signs may be worn or carried but shall not be affixed to any wooden, plastic or other type of support. Nor shall the placards or signs themselves be constructed of any hard material, such as wood, hard plastic or metal. No signs shall be draped or affixed to any City property.

E.   The following words, terms and phrases, when used in this section, shall have the meanings ascribed to them in this subsection, except where the context clearly indicates a different meaning:

  1.   PARADE shall mean any dash, demonstration, march, marathon, meeting, motorcade, parade, procession, public assembly, race, rally, or like activity consisting of persons, animals, or vehicles or a combination thereof upon the street within the City with an intent of attracting public attention that interferes with or has a tendency to interfere with the normal flow or regulation of traffic upon the streets. A "parade" for purposes of this section shall include the time period beginning two (2) hours prior to the beginning of the parade and shall conclude one (1) hour after the end of the parade. For purposes of this section, "parade" shall not include a group of more than two persons assembled together as part of an otherwise lawfully certified weapons education program.

  2.   PUBLIC ASSEMBLY shall mean any meeting, demonstration, rally, or gathering of more than twenty-five (25) persons for a common purpose as a result of prior planning that interferes with or has a tendency to interfere with the normal flow or regulation of pedestrian or vehicular traffic or occupies any street. A "public assembly" for purposes of this section shall include the time period beginning one (1) hour prior to the beginning of the public assembly and shall conclude one (1) hour after the end of the public assembly. For purposes of this section, "public assembly" shall not include a group of more than two persons assembled together as part of an otherwise lawfully certified weapons education program.

. . .

  4.   WEAPON shall mean any pistol, rifle, shotgun or other firearms of any kind whether loaded or unloaded, air rifle, air pistol, explosive, blasting caps, knife, hatchet, ax, slingshot, blackjack, metal knuckles, mace, iron buckle, baseball bat, ax handle, chains, crowbar, hammer, stick, pole, or other club or bludgeon or any other instrumentality customarily used or intended for probable use as a dangerous weapon.

### Section 4

The provisions of this ordinance are severable and if any provision, clause, sentence, subsection, word or part thereof is held illegal, invalid, or unconstitutional or inapplicable to any person or circumstance, such illegality, invalidity or unconstitutionality or inapplicability shall not affect or impair any of the remaining provisions, clauses, sentences, subsections, words or parts of this ordinance or their application to other persons or circumstances. It is hereby declared to be the legislative intent that this ordinance would have been adopted if such illegal, invalid or unconstitutional provision, clause, sentence, subsection, word, or part had not been included therein, and if such person or circumstance to which the ordinance or part thereof is held inapplicable had been specifically exempt therefrom

ORDER
00ORDERS\EDWARDS.WPD

## II.  STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, the evidence must be viewed in the light most favorable to the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986); Hughes v. U.S., 953 F.2d 531, 541 (9th Cir. 1992).

The Supreme Court has made it clear that under Rule 56, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). If the moving party meets that burden, summary judgment will be mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See id. If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323, 106 S. Ct. at 2553.[2]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." Fed. R. Civ. P. 56(c). An issue is "material" if

---

[2] See also, Rule 56(e) which provides, in part:
When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

ORDER
00ORDERS\EDWARDS.WPD

it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289, 88 S. Ct. 1575, 1592 (1968)). The Ninth Circuit, in line with this standard, found in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371, 374 (9th Cir. 1989) (citation omitted).

Furthermore, under certain limited circumstances a district court may issue summary judgment on its own motion. See Portsmouth Square, Inc. v. Shareholders Protective Comm., 770 F.2d 866, 869 (9th Cir. 1985). Sua sponte summary judgment is appropriate where one party moves for summary judgment and, after the hearing, it appears from all the evidence presented that there is no genuine issue of material fact and the non-moving party is entitled to judgment as a matter of law. Cool Fuel, Inc. v. Connett, 685 F.2d 309, 311 (9th Cir. 1982).

### III. ANALYSIS[3]

---

[3] As a preliminary note, Defendants appear to concede, in their Response to Plaintiff's Motion for Summary Judgment, that Ordinance 2920, as currently written, is unconstitutional because Section 1(C)(4) contains an affiliation bias in favor of Veterans groups. Docket No. 54 at 7. Having reviewed the record, this Court finds that Section 1(C)(4), which not only exempts Veteran groups from the firearm restriction but also relieves Veterans groups from the placard or sign construction limitation, does unconstitutionally favor Veterans groups over all others and must be found invalid. See Taxpayers for Vincent, 466 U.S. 789, 804, 104 S. Ct. 2118, 2123 (1984).

However, while Defendants have conceded to remedying the flaw created by Section 1(C)(4); Defendants argue that the invalidity of Section 1(C)(4) is not fatal to the entire Ordinance. This Court agrees. Ordinance 2920 contains a severability clause, see §4, and the Ordinance as originally drafted, Ordinance 2914, did not contain the Veterans exemption. Whether partial invalidation is appropriate is a state law issue, see Leavitt v. Jane L., 518 U.S.

ORDER
00ORDERS\EDWARDS.WPD

Plaintiff alleges that Ordinance 2920 is unconstitutional on its face. Specifically, Plaintiff alleges that the City is attempting to censor expressive conduct well within the First Amendment's preserve because Ordinance 2920 prohibits peaceful picketing (with traditional picket signs) on the public streets, in the parks, and on the sidewalks of Coeur d'Alene.

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech . . ."[4] And, while there is no doubt that as a general matter peaceful picketing or other protest activities are expressive activities clearly involving "speech" protected by the First Amendment, see e.g., Carey v. Brown, 447 U.S. 455, 460, 100 S. Ct. 2286, 2290 (1980); Gregory v. Chicago, 394 U.S. 111, 112, 89 S. Ct. 946, 947 (1969); Thornhill v. Alabama, 310 U.S. 88, 60 S. Ct. 736 (1940); U.S. v. Baugh, 187 F.3d 1037, 1042 (9th Cir. 1999), the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired. See Heffron v. Int'l Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 647, 101 S. Ct. 2559, 2564 (1981); see also Bakery and Pastry Drivers and Helpers Local 802 of Int'l Brotherhood of Teamsters v. Wohl, 315 U.S. 769, 775, 62 S. Ct. 816, 819 (1942) (a state is not required to tolerate peaceful picketing on an issue of public concern in all places and under all circumstances).

Public places, historically associated with the free exercise of expressive activities, such as

---

137, 139, 116 S. Ct. 2068, 2069 (1997), and depends on the intent of the City in passing the ordinance and whether the balance of the ordinance can function independently. See Desert Outdoor Advertising v. City of Moreno Valley, 103 F. 3d 814, 821 (9th Cir. 1996). Since a version of Ordinance 2920 was originally passed without the Veterans exemption, this Court finds that Section 1(C)(4) is not an indispensable part of the measure and it may be stricken without affecting the remainder of the ordinance. See State of Idaho v. Nielson, 131 Idaho 494, 960 P.2d 177 (1998). Accordingly, the Court will view the Plaintiff's claims in light of the finding that Section 1(C)(4) has been stricken from Ordinance 2920.

[4] The First Amendment provides:
"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

ORDER
00ORDERS\EDWARDS.WPD

streets, sidewalks and parks, are considered, without more, to be "public forums." See Perry Educ. Ass'n. v. Perry Local Educator's Ass'n., 460 U.S. 37, 45, 103 S. Ct. 948, 955 (1983); Carey v. Brown, 447 U.S. at 460, 100 S. Ct. at 2290; Hudgens v. NLRB, 424 U.S. 507, 515, 96 S. Ct. 1029, 1034 (1976); Cox v. New Hampshire, 312 U.S. 569, 574, 61 S. Ct. 762, 765 (1941); Hague v. CIO, 307 U.S. 496, 515, 59 S. Ct. 954, 964 (1939); Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998). In such places, the government's ability to permissibly restrict expressive conduct is very limited. The appropriate level of scrutiny is tied to whether the statute distinguishes between prohibited and permitted speech on the basis of content. See Frisby v. Schultz, 487 U.S. 474, 481, 108 S. Ct. 2495, 2500-01 (1988); Foti, 146 F.3d at 635. For the government to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. Perry Educ. Ass'n.,460 U.S. at 45, 103 S. Ct. at 955; Foti, 146 F.3d at 636. On the other hand, the government may enforce reasonable time, place, and manner regulations as long as the restrictions "are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." Perry Educ. Ass'n., 460 U.S. at 45, 103 S. Ct. at 955.

Clearly Plaintiff's speech activity is constitutionally protected. See City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 803, 104 S. Ct. 2118, 2127-28 (1984). Thus, this Court's first inquiry must be whether the City of Coeur d'Alene has adopted a regulation of speech "without reference to the content of the regulated speech." Madsen v. Women's Health Ctr., Inc., 512 U.S. 753, 763, 114 S. Ct. 2516, 2523 (1994) (internal quotations ommitted); U.S. v. Baugh, 187 F.3d 1037, 1043; Foti, 146 F.3d at 636.

### A.     Ordinance 2920 is Content-Neutral

Plaintiff argues that Ordinance 2920 is content-biased because of certain discriminatory selective restrictions based upon affiliation (§ 1(C)(4)) and certain discriminatory selective

ORDER
00ORDERS\EDWARDS.WPD

restrictions in the event definition section (§§ 1(E)(1), (2)). Docket No. 53 at 23-27. Defendants, on the other hand, argue that the ordinance is content-neutral because Ordinance 2920 "does not discriminate between lawful and unlawful conduct based upon the content of the demonstrator's communication." Docket No. 54 at 6. The Court has already addressed the affiliation discrimination issue and severed that portion of the ordinance that permitted affiliation discrimination; accordingly, this Court will only determine whether Plaintiffs claim, that the weapons education exemption from the definitions of "parade" and "public assembly" makes Ordinance 2920 content-biased, has merit.

Both parties acknowledge that Ordinance 2920 permits a sign to relay any message the bearer chooses. And, after a careful review, the Court finds that the exemption of a weapons education program from the definitions of "parade" and "public assembly" does not indicate a preference for, or hostility to, a particular viewpoint. The exemption of weapons education programs from these definitions does not distinguish favored speech from disfavored speech on the basis of any idea or view expressed, see Turner Broadcasting Sys. v. F.C.C., 512 U.S. 622, 643, 114 S. Ct. 2445, 2459 (1994). As explained by Defendants, "the purpose of a weapons program is not to attract public attention, but rather education on the use of weapons . . . a weapons education class . . . would not be an activity targeted at exercising free speech." Docket No. 54 at 18-19. Accordingly, the weapons education participants do not have an opportunity to disseminate any message denied to Plaintiff.

Next, the Court finds erroneous Plaintiff's argument that Ordinance 2920 is content-biased because he cannot use a cardboard sign held aloft by a yardstick to protest a Klansmen march but can use an upraised pitchfork or sign taped to the barrel of a locked and loaded M-16 to protest a march led by the National Rifle Association ("NRA"). If the NRA were leading a "march" instead of conducting a weapons education program; the association would not be exempt from the

ordinance and Plaintiff would not be permitted to protest the event as described in his hypothetical.

Finally, the Court finds erroneous Plaintiff's argument that Ordinance 2920 is content-biased because a certified weapons instructor would be able to hold an assembly replete with banners nailed to railroad ties or march down Main Street brandishing cocked six-guns and tow Howitzers with "death to Gary Edwards" painted on the barrels. It is, at the very least, arguable that an assembly or march down main street is not a "lawfully certified weapons education program" and while such a lawfully certified education program may interfere with traffic and appear to run afoul with the ordinance, the City has sufficient regulatory interests justifying selective exclusions or distinctions for educational programs.[5]

Based on the foregoing, the Court finds that Ordinance 2920, sans Section 1(C)(4), is content-neutral. Accordingly, this Court now turns to consider whether the ordinance is "narrowly tailored to serve a significant government interest" and whether it "leave[s] open ample alternative channels of communication." Perry Educ. Ass'n., 460 U.S. at 45, 103 S. Ct. at 955.

### B. Ordinance 2920 is Narrowly Tailored to Serve A Significant Governmental Interest

Next, Defendants must prove that the content-neutral restrictions are narrowly tailored to serve significant governmental interests. Plaintiff argues that Ordinance 2920 cannot be considered narrowly tailored in service of significant government interests due to its overbreadth and its vagueness. Defendants respond by arguing that Ordinance 2920, which was enacted to regulate the flow of pedestrian and vehicular traffic and to prevent rigid-support materials used on signs from being used as weapons and turned upon police officers, marchers, or other demonstrators, serves

---

[5] Idaho Code Section 18-3302(C) recognizes weapon education programs, such as hunter education or hunter safety courses approved by the Department of Fish and Game, NRA firearms safety or training courses or hunter education courses, and firearms safety or training courses through law enforcement or other entities that use instructors certified by the NRA or the Department of Law Enforcement.

ORDER
00ORDERS\EDWARDS.WPD

a legitimate public interest because it targets no more evil than they seek to remedy. The Court will deal with each of Plaintiff's arguments in turn.

### 1. Ordinance 2920 is Not Overbroad

A clear and precise enactment may be 'overbroad' if in its reach it prohibits constitutionally protected conduct. Grayned v. City of Rockford, 408 U.S. 104, 115, 92 S. Ct. 2294, 2303 (1972). And, while the Government has no power to restrict activity because of its message; reasonable 'time, place and manner' regulations may be necessary to further significant governmental interests, and are permitted.

### a. The Place Regulated is Not Overbroad

First, Plaintiff argues that Ordinance 2920 is overbroad as to place regulated because it attempts to suspend the constitutional right to picket, under the threat of incarceration and fine, the very places in which traditional picket signs are generally put to use. Defendants respond by arguing that the ordinance does not suspend the constitutional right to picket on a public street; rather, the ordinance limits that construction materials that can be used in constructing a sign for use at a parade or public assembly.

A regulation is narrowly tailored when it "targets and eliminates no more than the exact source of 'evil' it seeks to remedy." Frisby, 487 U.S. at 485, 108 S. Ct. at 2503; see also Taxpayers for Vincent, 466 U.S. at 808-810, 104 S. Ct. at 2130-2132 (upholding an ordinance that banned all signs on public property because the interest supporting the regulation, an esthetic interest in avoiding visual clutter and blight, rendered each sign an evil).

There is little question to this Court that protecting the safety of citizens at parades and assemblies is a legitimate governmental concern. And, while Ordinance 2920 may, as Plaintiff asserts, prohibit "traditional" picket signs at public assemblies and parades; Ordinance 2920 does not otherwise prohibit Plaintiff from exercising his First Amendment right to picket or protest. As

ORDER
00ORDERS\EDWARDS.WPD

stated by Plaintiff, Ordinance 2920's limitation on materials for sign construction does not act as a continuous and pervasive restraint on all freedoms of discussion. Ordinance 2920 does not ban a broad range of speech or ban signs on public streets. Accordingly, this Court finds that Ordinance 2920, in seeking to promote safety, does not sweep within its ambit other activities that constitute an exercise of freedom of speech.

### b. The Time Regulated is Not Overbroad

Next, Plaintiff argues that section E of Ordinance 2920, which expands the time of a parade or public assembly, causes section D to be fatally overbroad. The Court disagrees. As articulated by Defendants, parades and public assemblies do not occur instantaneously. Set-up for such events sometimes occurs hours before the event and it defies common sense to suggest that enforcement cannot begin until the moment the parade or public assembly starts. Accordingly, the Court finds that the time parameters placed upon parades and public assemblies are reasonable.

### c. The Manner Regulated is Not Overbroad

Next, Plaintiff argues that Ordinance 2920 is overbroad as to its definition of parade and public assembly. Specifically, Plaintiff appears to be arguing that Ordinance 2920 would restrict picketing incident to labor unrest and criminalize the conduct of citizens who mistakenly picket an area too-near a pre-school field trip. First, as explained by Defendants, Ordinance 2920 would not restrict picketing incident to labor unrest because such an activity would not be a pre-planned event and would not meet the definition of a public assembly or parade under the ordinance.[6] As to Plaintiffs second argument, unless the field trip interferes with the normal flow or regulation of pedestrian or vehicular traffic or occupies a city street, the "field trip" would not classify as a public assembly and would have no effect on the citizen carrying his "End is Near" picket sign.

---

[6] Furthermore, the ordinance would not prohibit the maids from picketing in a pre-planned labor protest. Rather, the ordinance would only restrict the protesters from carrying "traditional" picket signs. Signs without attached supports are not prohibited by the ordinance nor is the content of the message on any sign.

ORDER
00ORDERS\EDWARDS.WPD

The Court agrees that Ordinance 2920 is not a model of clarity and arguably could be redrafted to fine tune certain language to avoid confusion; however, the definitions of parade and public assembly contained in Ordinance 2920 are unrelated to the suppression of speech, achieve an important interest unrelated to the suppression of speech and do not burden substantially more speech than necessary to further the city's interest in regulating the flow of pedestrian and vehicular traffic and promoting safety during public events. See Turner Broadcasting Sys. v. F.C.C., 512 U.S. 622, 114 S. Ct. 2445 (1994).

### 2. Ordinance 2920 is Not Vague

Next Plaintiff argues that Ordinance 2920 cannot be considered narrowly tailored because the ordinance is vague. It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. First, laws must give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. See Grayned, 408 U.S. at 108, 92 S. Ct. at 2298-99. Second, laws must provide explicit standards for those who apply them. A vague law is one that impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Id. at 108-109, 92 S. Ct. at 2299.

#### a. Ordinance 2920 Provides Fair Notice

Plaintiff first argues that Ordinance 2920 fails to give persons of ordinary intelligence reasonable opportunity to know what is prohibited, denying citizens the ability to govern themselves and in so doing chose lawful over unlawful conduct. Specifically, Plaintiff objects to the failure of § 1(D) to posit geographical limitations and the descriptive term "hard plastic." Defendants respond by arguing that Plaintiff has continuously argued and acknowledged that Ordinance 2920 covers the traditional public fora of public streets in Coeur d'Alene so it is contrary for him to now argue that a protester can not discern the location of a public street. Furthermore, Defendants argue that it is

not an uncommon human experience to be able to have encountered a 'hard' and a 'soft' plastic and it is not unfathomable that a person of reasonable intelligence would know the difference.

After reviewing Ordinance 2920, the Court finds that while § (1)(D) of the ordinance could have been drafted to specifically delineate certain areas, see Ordinance 2920 § 1(B), the ordinance, as written, is not impermissibly vague. Furthermore, the Court finds that while the descriptive term "hard plastic" was not perhaps the best description, especially in light of the fact that the police have permitted, and encouraged, the use of polyvinyl chloride (PVC) piping, the Supreme Court has declared that mathematical certainty is not required and the words of ordinances may be marked by 'flexibility and reasonable breadth, rather than meticulous specificity." Grayned, 408 U.S. at 109, 92 S. Ct. at 2300. The Court agrees with the Defendants that, taken as a whole, the ordinance clearly sought to prohibit rigid or hard materials that could be used as make-shift weapons and was designed to protect citizens. Taken as a whole, the ordinance obviously forbids the presence of weapons, including makeshift weapons, at a sufficiently fixed place - at or near public assemblies and parades, see Ordinance 2920 § 1(A), (B) - and at fixed times - one hour prior to a public assembly, two hours prior to a parade, and one hour subsequent to a parade or public assembly, see Ordinance 2920 § 1(E)(1), (2). Accordingly, the Court finds that the ordinance gives fair notice to those to whom it is directed. See Grayned, 408 U.S. at 112, 92 S. Ct. at 2301.

      **b.    Ordinance 2920 Does Not Promote Arbitrary and Discriminatory Enforcement**

Next, Plaintiff argues that Ordinance 2920 lacks explicit standards, setting the stage for arbitrary and discriminatory enforcement because it delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis.

Although Plaintiff disagrees with enforcing officials as to what "hard plastic" is for purposes of the ordinance, there is no evidence that there has been either arbitrary or discriminatory

enforcement. The Court finds that this is not a vague ordinance prohibiting the exercise of free speech; rather, the ordinance was specifically written in an attempt to permit the exercise of free speech while attempting to regulate and curb potential violent disruptions that may occur as a result of such constitutional exercises. Although Ordinance 2920 may not be as precise as some statutes upheld by the United States Supreme Court, this Court finds Ordinance 2920 clearly delineates its reach in words of common understanding. Ordinance 2920 does not permit punishment for the expression of an unpopular point of view and it contains no broad invitation to subjective or discriminatory enforcement. Section 1(E)(4) clearly lists those things to be included in the category of "weapon" and § 1(D) clearly explains those materials that cannot be used to support signs or placards.[7] As always, enforcement requires the exercise of some degree of police judgment, but, as confined, that degree of judgment here is permissible. See Grayned, 408 U.S. 114, 92 S. Ct. 2302.

In conclusion, the Coeur d'Alene City Council has made the basic policy choices and has given fair warning as to what is prohibited. Ordinance 2920 defines boundaries sufficiently distinct for citizens, policemen, juries, and district judges. The ordinance is not impermissibly vague.

### C. Ordinance 2920 Leaves Open Ample Alternative Channels of Communication

Finally, in order for this Court to permit the City to enforce reasonable time, place, and manner regulations, this Court must determine that Ordinance 2920 leaves Plaintiff with ample alternative channels of communication. In support of such a finding, Defendants argue that Plaintiff is allowed to engage in a large variety of expressive activities including picketing, hand-billing,

---

[7] The fact that Plaintiff disagrees with enforcing officials with regard to whether PVC pipe should be characterized as "hard plastic" does not result in a finding of arbitrary enforcement.

ORDER
00ORDERS\EDWARDS.WPD

15

carry signs (without supports and made of non-rigid materials), sing, shout, chant, perform dramatic presentations, solicit signatures for petitions and appeal to those who pass by.

Despite Plaintiff's continued assertion that §1(D) of Ordinance 2920 robs him of his constitutional rights because he cannot carry his protest sign on a stick, the First Amendment does not guarantee the right to communicate one's views in any manner desired. See e.g., Heffron, 452 U.S. at 647, 101 S. Ct. at 2564, Bakery and Pastery Drivers, 315 U.S. at 775, 62 S. Ct. at 819. Accordingly, this Court finds that Ordinance 2920 does not prohibit Plaintiff from disseminating his message and leaves open ample alternative channels of communication.

### D.    Thornhill v. Alabama is Distinguishable from the Case at Bar

Last, Plaintiff argues that any prohibition of the construction of a picket sign is unconstitutional pursuant to the case of Thornhill v. Alabama, 310 U.S. 88, 60 S. Ct. 736. In Thornhill, the Supreme Court found that laws which failed to "aim specifically at evils within the allowable area of State control [and sweep] within its ambit other activities" are a constitutional threat. Id. at 97, 60 S. Ct. at 742.

Despite Plaintiff's heavy reliance on Thornhill, this Court finds that case readily distinguishable from the case at bar. Unlike the ordinance in question here, the Thornhill statute failed to leave room for any type of exception and made an offense of "every practicable method whereby the facts of a labor dispute may be publicized in the vicinity of the place of business of an employer." Id. at 99, 60 S. Ct. at 743. The Supreme Court noted that,

> [i]n sum, whatever the means used to publicize the facts of a labor dispute, whether by printed sign, by pamphlet, by word of mouth or otherwise, all such activity without exception is within the inclusive prohibition of the statute so long as it occurs in the vicinity of the scene of the dispute.

Id. at 101, 60 S. Ct. at 744.

Additionally, in Thornhill, the Supreme Court noted that the State has the power and the duty "to take adequate steps to preserve the peace and to protect the privacy, the lives, and the

ORDER
00ORDERS\EDWARDS.WPD

property of its residents." Id. at 88, 60 S. Ct. at 745. And, while the Court found no clear and present danger of destruction of life or property, or invasion of the right of privacy, or breach of the peace inherent in the activities of every person who approaches the premises of an employer and publicizes the facts of a labor dispute involving the latter; id. at 88, 60 S. Ct. at 745-46, it is not inconceivable that the use of wood, metals, and hard plastics in parades could become dangerous if used as weapons.

After reviewing the record, this Court finds that Ordinance 2920 does not sweep too broadly in attempting to serve the interests of the city. The citizens of Coeur d'Alene have not been deprived of the opportunity to express their views in public forums particularly suited to open assembly, discussion, and debate because the City has not enacted a complete ban on picketing or the carrying of signs. In fact, the City recommends using PVC pipe as an alternative to wood product and metals. And, while the recommended use of PVC pipe exemplifies the fact that the City's standard restricting "wood, plastic or other type of support . . . and construction of hard materials, such as wood, hard plastic, or metal" is flexible, and that the officials implementing the standards will exercise considerable discretion; perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity. See e.g., Ward v. Rock Against Racism, 491 U.S. 781, 794, 109 S. Ct. 2746, 2755 (1989); Grayned, 408 U.S. at 110, 92 S. Ct. at 2300 (1972).

## IV. CONCLUSION

In light of the foregoing, this Court finds that the Plaintiff has failed to make a showing sufficient to establish a genuine issue of fact and the Defendants, the non-moving party in this case, are entitled to judgment as a matter of law.

## V. ORDER

Based on the foregoing, and the Court being fully advised in the premises,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (Docket No. 50) is **DENIED**.

**IT IS FURTHER ORDERED** that Summary Judgment will be **GRANTED** in favor of Defendants consistent with the terms of this Order. The matter is hereby dismissed with prejudice.

Dated this 2nd day of June, 2000.

EDWARD J. LODGE
UNITED STATES DISTRICT JUDGE

ORDER
00ORDERS\EDWARDS.WPD

United States District Court
for the
District of Idaho
June 1, 2000

* * CLERK'S CERTIFICATE OF MAILING * *

Re:  3:99-cv-00131

I certify that a copy of the attached document was mailed to the following named persons:

Bryan J Brown, Esq.
AMERICAN FAMILY ASSOCIATION LAW CENTER
PO Drawer 2440
107 Parkgate
Tupelo, MS  38803

Brian Fahling, Esq.
AMERICAN FAMILY ASSOCIATION LAW CENTER
PO Drawer 2440
107 Parkgate
Tupelo, MS  38803

Stephen F Smith, Esq.
COOKE LAMANNA COGSWELL & SMITH
PO Box C
Sandpoint, ID  83864-0034

Nick M Lamanna, Esq.
COOKE LAMANNA COGSWELL & SMITH
PO Box C
Sandpoint, ID  83864-0034

Clark H Richards, Esq.
LUKINS & ANNIS
250 Northwest Blvd #102
Coeur d'Alene, ID  83814-2971


Cameron S. Burke, Clerk

Date: June 2, 2000        BY: Carol Vaug
                              (Deputy Clerk)